JUNE.                    PUMPHREY's Lessee vs. ASHPAW.

A tract of land called *S F*, was surveyed in 1694 and patented in 1695. Another call-ed *G C*, was sur-veyed in 1796, and patented in 1798.

ERROR to *Anne-Arundel* County Court. This was an ac-tion of ejectment, to recover a tract of land called *The Addition to Goznell's Chance.* Defence was taken on war-rant, and plots were returned.

This last tract is described in the certificate and grant as beginning at a stone heretofore planted in the place or spot where formerly stood a bounded red oak, the last bounded tree of a tract of land called *S F*, and running from thence reverse of the third line of *S F* and bounding thereon, *as now laid down with an allowance of forty-five minutes, for variation* &c.—Held, that the first line of the tract of land called *G C*, must be run from the stone described as the place of beginning, according to the survey made of *S F* in 1796 (the time when *G C* was taken up,) with an allowance of forty-five minutes for variation, as expressed in the certificate and grant, and not according to the true loca-tion of *S F*, as *S F* was originally surveyed in 1694,

1818.

Pumphrey
vs
Ashpaw

1. At the trial the plaintiff, (the appellant,) with other testimony, gave in evidence the patent of the tract of land called *Smith's Forest*, surveyed the 6th of March 1694 for, and granted to, *Philemon Smith*, on the 10th of November 1695, and described as "lying on the south side of *Curtis's* creek, beginning at a bounded pine standing in the line of a parcel of land formerly laid out for *Maurice Baker*, and running with the said line S S E 484 perches, then W S W 60 perches, then N W 536 perches, to a bounded red oak standing by *Curtis's* creek, then N E by E 43 perches, then by a straight line to the first bound pine, containing and laid out for 200 acres of land more or less." He also read in evidence a patent of a tract of land called *The Addition to Goznell's Chance*, surveyed on the 25th of November 1796 for, and granted to, *George Ashpaw* and *John Rowles*, on the 2d of August 1798, and described as "beginning at a stone planted in the place or spot where formerly stood a bounded red oak, the last bounded tree of a tract of land called *Smith's Forest*, and the beginning tree of the original tract of land called *Goznell's Chance*, which said stone is also the beginning of the original tract of land called *Love in a Village*, and running from thence reverse of the third line of the aforesaid *Smith's Forest*, and bounding thereon, as now laid down, with an allowance of 45 minutes for variation, S 23° 15′ E 559 perches, then S 66° 45′ W 75 perches, then running with and bounding on the third line of the original *Goznell's Chance*, as now laid down, to correspond with the beginning of the aforesaid *Crouche's Forest*, N." &c. The defendant then prayed the opinion of the court to the jury, that the land called *The Addition to Goznell's Chance* must be located so as the first line thereof shall bind on the third line of *Smith's Forest*, as that tract was originally located. The Court, [*Chase*, Ch. J. and *Ridgely*, A. J.] were of opinion, that it was the right and province of the jury to decide what was the proper allowance to be made for the variation of the compass according to the evidence; and that the jury having first ascertained what was the true location of *Smith's Forest*, that then the first line of *The Addition to Goznell's Chance* must run with the third line of *Smith's Forest*, according to the true location of that tract. The plaintiff excepted.

2. The plaintiff then prayed the opinion of the court to the jury, that to ascertain the true location of *The Addition to Goznell's Chance*, the third line of *Smith's Forest* must be run as it was located at the time the resurvey called *The Addition to Goznell's Chance* was made. This opinion the court refused to give. The plaintiff excepted; and the verdict and judgment being against him, he brought a writ of error, returnable to this court.

The cause was argued before BUCHANAN, EARLE, JOHNSON, MARTIN, and DORSEY, J.

1818.

Pumphrey
vs
Ashpaw

*Stephen*, for the Plaintiff in error.

*Magruder*, for the Defendant in error.   He cited *Green vs. M'Clellan, (Ante* 200.)

BUCHANAN, J. delivered the opinion of the Court. After stating the facts he proceeded. The point in controversy is, how the first line of *The Addition to Goznell's Chance* ought to be run from the stone described as the place of beginning, whether according to a survey of *Smith's Forest* made on the 25th of November 1796, (the day on which *The Addition to Goznell's Chance* was taken up,) with an allowance of forty five minutes for variation, as expressed in the certificate and grant, or according to the true location of *Smith's Forest*, as originally surveyed on the 6th of March 1694? There is no difficulty in expounding the grant of *The Addition to Goznell's Chance*. The words, *as now laid down with an allowance of forty-five minutes for variation*, with reference to *Smith's Forest*, are not used to show the true location of that tract of land, but to describe the manner in which *The Addition to Goznell's Chance* was run when originally taken up. There is no ambiguity, latent or patent; the position of the land, as it was originally laid down, is clearly described; and the question is not, how a general indefinite call (in the description of a junior,) to the lines of an elder tract of land, should be gratified, which need not be here examined; but whether the expressions in a grant, particularly designating the manner in which the land was originally surveyed, shall be held to control the location, or be altogether rejected.

As a general position, nothing is more clear, than that the description contained in a grant shall govern, and that the land intended to be conveyed, shall be ascertained and pass by the description so given, and no reason is perceived for distinguishing this from any other case.

It is not important what the true location of *Smith's Forest* is, or what allowance for the variation of the magnetic needle would have been necessary and proper to ascertain its true location, when *The Addition of Goznell's Chance* was surveyed—Whether forty-five minutes or forty-five degrees—The intention was, that the first line of *The Addition to Goznell's Chance* should be regulated, not by what might be the true location of *Smith's Forest*, but by a running of that tract of land on the 25th of November in the year 1796, with an allowance of forty-five minutes for the variation of the needle, as distinguished from the original location; and to give to it any other location, would be, not only to defeat that intention, and entirely disregard the expressions of the grant, by which it is manifested, but also to depart from the actual original running of the land—And for what purpose? Surely not for the greater certainty; a specified allowance for the variation of the compass being clear of all doubt, and the true original location of *Smith's Forest*, wholly uncertain, and

1818.

Pumphrey
v s
Ashpaw

only to be ascertained by matter *de hors* the grant. Every tract of land ought to be located as it was run when originally taken up, if that can be done consistently with the expressions in the grant; and such is the particular description given in the grant of the manner in which the first line of *The Addition to Goznell's Chance* was originally run, that if one is gratified, the other must be effective. But if that description is departed from, the original running of the land must also be disregarded. We do not, therefore, concur with the court below in the opinion expressed in either of the bills of exceptions, but think that *The Addition to Goznell's Chance*, ought to be located according to the expressions of the grant.

Johnson, J. The only question arising in this cause, is, Whether *those lines* of *The Addition to Goznell's Chance*, that call *to run to, and with* lines of *Smith's Forest, must* run to, and be governed by, those lines, according to the *original location of that tract.*

The expressions in the certificate of *The Addition to Goznell's Chance*, are running to the line of *Smith's Forest, as now laid down with an allowance* of forty-five minutes for variation, and then running *with several lines of that tract as laid down with the same variation.* It is not recollected, that a question precisely like the one now before court has ever been submitted to its consideration. If *The Addition to Goznell's Chance* must run to, and be governed by, the original location of *Smith's Forest*, and the jury should find that location *not to correspond* with the location made of that tract by an allowance of forty five minutes for variation in the year 1796, when *The Addition to Goznell's Chance* was taken up, then it follows that that tract would have a different location than was plainly and expressly given to it when the survey was made, and the expressions of the certificate, as *now run with forty five minutes for variation, must be rejected.* If the jury should find the true location of *Smith's Forest* to be as it was run in the year 1796, with the variation mentioned, then *The Addition to Goznell's Chance* would correspond with the original location; but as the tract called for is, in the tract calling for it, *described* as then run in a *particular manner;* I am of opinion that *The Addition to Goznell's Chance* ought not to have *been confined* to the true original location of *Smith's Forest*, and that the court below erred in directing the jury that the true original location of *Smith's Forest must control The Addition to Goznell's Chance.* I therefore concur with this Court in pronouncing that the judgment of the Court below be reversed.

JUDGMENT REVERSED. (*a*)

(*a*) Chase, Ch. J. withdrew from the bench at the argument and decision of this case; but afterwards furnished the Reporters with the following remarks upon the opinion delivered by this Court.

1818.

Pumphrey
vs
Ashpaw

The Court of Appeals, in expressing their opinion in this case, reject, or lay no stress upon the most *material parts of the description* of the running of the first line of *The Addition to Goznell's Chance*. *The Addition to Goznell's Chance* begins at a stone, being the place where the last bounded tree of *Smith's Forest* stood, and running from thence *reverse* of the *third line* of *Smith's Forest*, and *bounding thereon*. According to these expressions, it is plain the intention was to make the third line of *Smith's Forest* the boundary to the full extent of that line. The first line of *The Addition to Goznell's Chance* was to run with and bind on the third line of *Smith's Forest* reversed The question is, what effect ought to be given to the subsequent expressions, "as now laid down with an allowance of 45 minutes for variation, south 23 degrees 15 minutes, east 559 perches?" Certainly the surveyor could not change the true position of *Smith's Forest* The first line of *The Addition to Goznell's Chance* was to bind on the third line of *Smith's Forest* reversed. These expressions are imperative, and cannot be rejected. The plain intention was to make the third line of *Smith's Forest* the first line of *The Addition to Goznell's Chance*, to the full extent of the said third line, which can only be done by uniting and incorporating the first line of *The Addition to Goznell's Chance* with the third line of *Smith's Forest* reversed, which renders it essentially necessary to ascertain the true location of *Smith's Forest*. The mode adopted by the surveyor to ascertain the true location of *Smith's Forest* was fanciful, and cannot be considered as any part of the description of the land granted. The legislature has not yet been able to regulate the variation of the compass by any definite or precise rule. The surveyor cannot arbitrarily fix any rule. The subject belongs to the jury alone, who are governed by the circumstances of each case in making an allowance. It must be taken for granted, that the running with an allowance of 45 minutes for variation, did not correspond with the true position of *Smith's Forest;* if so the essential part of the description running with, and binding on the third line, must be rejected as inefficient and inoperative. The first line of *The Addition to Goznell's Chance* can only be ascertained by reference to the expressions, "running with and binding on the third line of *Smith's Forest*," and certainly the surveyor could not alter the location of *Smith's Forest* by giving it a position according to his notions of what was the proper allowance to be made for the variation of the compass—a subject too great and too important for his decision. Ever since the question respecting the variation of the compass has been agitated, it has been uniformly and invariably admitted and decided, that it belonged to the province of the jury alone to make the allowance. The court below were of opinion that the expressions, "thence reverse of the third line of *Smith's Forest* and bounding thereon," were binding and imperative, and not controled by the subsequent expressions, which were merely indicative of the opinion of the surveyor as to the true location of *Smith's Forest*, and does not differ from the common case of the surveyor's certifying, that he run with and binding on the line of an elder survey a particular course and distance, which course and distance do not correspond with the line of said land. In such case the court would not hesitate to say, the true construction of the grant was to adhere to the call, and reject the course and distance, although the surveyor has certified he run the course and distance particularly mentioned, as the line of the said elder tract. In what respect does this case differ from the ordinary case of a peremptory or imperative call, and course and distance, which do not correspond? Invariably and uniformly the call has been preferred, and the course and distance rejected. The surveyor certifies, that the beginning of *The Addition to Goznell's Chance* was "at a stone planted at the end of the third line

of *Smith's Forest*, and running from thence *reverse* of the third line of said land, and bounding thereon (as now laid down with an allowance of 4 minutes for variation,) south 23 degrees 15 minutes east 559 perches."

The course and distance do not correspond with the third line of *Smith's Forest* reversed, and must be rejected, because the call is imperative. Can the reason assigned by the surveyor for running that course and distance give the course and distance any additional weight, and entitle it to the preference to a peremptory and unequivocal call? Certainly not. It is no matter what motive or reason induced the surveyor to run that course and distance; if it does not agree with the third line of *Smith's Forest*, reversed, it must be rejected. These principles are settled and cannot be shaken.